UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
EUGENE G. LAPIERRE, DANIEL PADILLA,
LENNY TAVERAS, SHAWN TRENT, ELY
THOMAS, JAHLIL TREASURE, MATTHEW
MARTINEZ, ANTINIO CULLAL, NERCIN
CHACON, WESTLEY WITTS, JONATHAN
SCULLY, and JOSE HERNDEZ,

       Plaintiffs,    <u>MEMORANDUM & ORDER</u>
                21-CV-0464(JS)(ARL)

   -against-

SHERIFF JAMES E. DZURENDA,
DR. DONNA M. HENIG, CAPTAIN
DONAHUE, CAPTAIN GOLIO,
SGT. MARONNE, C.O. BARRERA,
C.O. HORAN, C.O. TORCHA,
GRIEVANCE SUPERVISOR JOHN DOE, and
KITCHEN SUPERVISOR JOHN DOE,

       Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:    Eugene G. LaPierre, 2017008467, <u>pro se</u>
        Daniel Padilla, 2020000890, <u>pro se</u>
        Lenny Taveras, <u>pro se</u>
        Shawn Trent, <u>pro se</u>
        Ely Thomas, 2017030019, <u>pro se</u>
        Jahlil Treasure, <u>pro se</u>
        Antinio Cullal, <u>pro se</u>
        Nercin Chacon, <u>pro se</u>
        Westley Witts, <u>pro se</u>
        Jonathan Scully, 2019040065, <u>pro se</u>
        Jose Herndez, <u>pro se</u>

        Nassau County Correctional Facility
        100 Carman Avenue
        East Meadow, New York 11554

For Defendants:    No Appearances

SEYBERT, District Judge:

On or around January 27, 2021, plaintiffs Eugene LaPierre ("LaPierre" or "Plaintiff"), Daniel Padilla, Lenny Taveras, Shawn Trent, Ely Thomas, Jahlil Treasure, Matthew Martinez, Antinio Cullal, Nercin Chacon, Westley Witts, Jonathan Scully, and Jose Herndez, who are incarcerated and proceeding pro se, initiated this action by filing a purported class action Complaint against Nassau County Sheriff James E. Dzurenda, Dr. Donna M. Henig, Captain Donahue, Captain Golio, Sergeant Maronne, C.O. Barrera, C.O. Horan, C.O. Torcha, Grievance Supervisor John Doe, and Kitchen Supervisor John Doe (collectively, "Defendants"). (See Compl., ECF No. 1.) Plaintiff LaPierre also filed an application to proceed in forma pauperis (ECF No. 2), an application pursuant to Federal Rule of Civil Procedure 65 for preliminary injunctive relief (ECF No. 4), a motion to amend the Complaint (ECF No. 32), and a motion for class certification and pro bono counsel (ECF No. 33).

For the following reasons, this action shall proceed with Plaintiff LaPierre as the sole Plaintiff, except that Plaintiff's Eighth Amendment cruel and unusual punishment claim, his denial of access to the courts claim, and his claims against the John Doe Kitchen Supervisor are DISMISSED WITHOUT PREJUDICE. Additionally, Plaintiff LaPierre's application to proceed in forma pauperis is GRANTED; the application for a preliminary injunction

is DENIED; leave to amend is GRANTED; the motion for class certification is DENIED; and the request for the appointment of pro bono counsel is DENIED without prejudice and with leave to renew at a later stage in these proceedings, if warranted. Moreover, claims brought by Plaintiffs Padilla, Treasure, Martinez, Cullal, Chacon, and Herndez are DISMISSED WITHOUT PREJUDICE for failure to prosecute. Finally, claims asserted by Plaintiffs Scully, Thomas, Trent, Taveras, and Witts are DISMISSED WITHOUT PREJUDICE to refiling as separate actions.

<u>BACKGROUND</u>

LaPierre's fifty-three-page Complaint alleges, pursuant to 42 U.S.C. § 1983 ("Section 1983"), claims for: excessive force, denial of due process, cruel and unusual punishment, and denial of access to the courts, inter alia. The Complaint's allegations relate to six categories: (1) Nassau County Correctional Center's "arbitrary" disciplinary procedures (Compl. ¶¶ 53-63); (2) the "grievance supervisor" (id. ¶¶ 64-70); (3) the "kitchen supervisor" (id. ¶¶ 70-75); (4) the law library (id. ¶¶ 76-92); (5) COVID-19 concerns (id. ¶¶ 93-103); and (6) the overall conditions of confinement (id. ¶¶ 104-10).

More specifically, Plaintiff[1] alleges that on October 24, 2020, he was walking to the recreation yard with an

---

[1] As noted above, the Court refers to "Plaintiff" and "LaPierre" interchangeably.

envelope and was instructed by Officer Horan to "put the mail back, no mail in the yard." (Compl. ¶ 11.) Plaintiff complied, put the envelope on a table, and told Officer Horan "I don't want no problems super cop." (Id.) Officer Horan and other officers ordered Plaintiff to return to his cell and Plaintiff objected, telling Officer Horan to "suck his dick." (Id. ¶ 12.) According to the Complaint, Officer Horan punched Plaintiff in the head and Plaintiff fought back. (Id.) Other unidentified officers pulled Plaintiff away from Officer Horan, handcuffed and shackled him, and "repeatedly kicked [Plaintiff] in the back, his right side rib[]s and stomped on his neck and back." (Id. ¶ 13.)

Plaintiff was "placed in solitary confinement also known as the Behavior Modification Unit (BMU)." (Id. ¶ 14.) Plaintiff claims that "[i]t is common practice for officers at Nassau County Correction to assault prisoners and then place assault charges [o]n the prisoner. [Plaintiff] received a misbehavior report for assault on staff when in fact he was assaulted in front of 5 or 6 officers." (Id.) Plaintiff alleges that his cell in the BMU was "dirty" and that he was provided "two green blankets, a bar of soap and a roll of tissue." (Id. ¶ 15.) Plaintiff also alleges that he was not given a clean cell, a shower, a phone call, "rec" yard time, or any of his personal property, in violation of "BMU Policy." (Id.) Plaintiff complains that the food in the BMU is "always served cold" and "everything is dumped on top of one

another." (Compl. ¶ 17.)  Further, Plaintiff asserts that Captain Donahue "strictly enforced" the BMU policy insofar as it requires a strip search upon entry to the BMU.  (Id. ¶ 15.)  Plaintiff alleges that by letters dated April 5, 2020 and November 10, 2020, he complained about the conditions at the BMU to Sheriff Dzurenda but did not receive a response.  (Id. ¶ 19.)

As a result of the October 24, 2020 incident between Plaintiff and Officer Horan, a disciplinary hearing was scheduled for November 11, 2020.  (Id. ¶ 20.)  On November 11, 2020, Plaintiff argued that he was not ready to proceed because he needed assistance identifying the officers, among others, to call as witnesses.  (Id. ¶¶ 20-21.)  Sergeant Maronne, who presided over the hearing, denied the adjournment request and the hearing proceeded even though Plaintiff "was unable to prepare and submit a defense."  (Id. ¶ 21.)  Sergeant Maronne found Plaintiff guilty of assaulting Officer Horan and imposed sanctions consisting of "180 days lock in, 60 days lost of visits, 24 weeks lost of commissary, a disciplinary surcharge of $25 and a restitution in the amount of $100."  (Id.)  Plaintiff claims that he suffers from high blood pressure, anxiety attacks, and chest pains as a result of the time he spent in the BMU and the BMU's conditions.[2]  (Id. ¶ 51.)

---

[2] According to the Complaint, Plaintiff's situation is not unique. He details other individuals who were, or are, housed in the BMU

Plaintiff also asserts allegations regarding the disciplinary and grievance procedures at the Nassau County Correctional Center. (Id. ¶¶ 53-70.) According to the Complaint, the sanctions imposed are "arbitrary," "excessive," and "unwarranted." (Id. ¶¶ 53-54.) In addition to the October 24, 2020 incident, Plaintiff provides several examples where he received misbehavior reports that gave rise to a disciplinary hearing over his objections. Specifically, Plaintiff alleges that he was not prepared because he did not receive notice of the charges or an opportunity to prepare a defense. (Id. ¶¶ 55-63.) With regard to grievances, Plaintiff claims that there is no individual to contact about the grievance procedures because the "grievance supervisor is unknown to the entire prison population at the Nassau County Correctional Facility." (Id. ¶ 64.) Plaintiff believes that grievances "disappear" and are thrown away. (Id.)

Next, Plaintiff alleges that the "Kitchen Supervisor" provides the "lowest grade of food possible" that "is completely lacking in nutrition." (Compl. ¶ 71.) He alleges to have filed a grievance wherein in requested a menu because the food is often difficult to identify. (Id. ¶¶ 73-74.) The grievance was denied

---

and lists their circumstances and the conditions in the BMU. (Compl. ¶¶ 23-50.)

on the grounds that he "cannot have access to [the] kitchen menu,
but can be verbally informed[.]"  (Id. ¶ 73.)

        Plaintiff further complains that the law library, as
well as access thereto, is inadequate.  (Id. ¶¶ 76-92.)  He avers
that the law library lacks "legal resources on how to seek an
adjournment or a stay in civil matters."  (Id. ¶ 77.)  Plaintiff
claims that he had an on-going civil case pending in the Franklin
County Supreme Court and was unable to timely request an
adjournment, which resulted in the dismissal of the case.  (Id.)
Plaintiff also alleges that in May 2019, all law books were removed
from the library to be replaced with computers that did not arrive
until February 2020.  (Id. ¶ 78.)  According to Plaintiff, the
"newly installed computers in the law library" do "not contain the
January 1, 2020 Bail Reform Laws."  (Id. ¶ 78.)  Moreover, inmates
are not permitted to use the photocopy machine.  Accordingly,
Plaintiff filed a grievance seeking to use the copy machine so he
could serve five copies of a nineteen-page motion in a state court
case.  (Id. ¶ 79.)  The grievance was denied on the grounds that
Plaintiff can duplicate the motion by hand.  (Id.)  According to
Plaintiff, he has suffered retaliation for his "non-stop
complaints [and] grievances" about law library staff.
Specifically, he claims that his legal papers have been thrown in
the toilet and/or confiscated.  (Compl. ¶ 81.)  He also complains
that, since November 2020, he has been denied a pen and sufficient

paper, which delayed the filing of this action.  (Id. ¶ 115.)
Plaintiff asserts that the "complaint cannot be completed until
[he] is provided with the necessary paper and a BIC pen."  (Id. ¶
118.)

Finally, Plaintiff complains about the Nassau County
Correctional Center's COVID-19 response and protocols.  (Id. ¶¶
93-103.)  The Complaint alleges that Dr. Henig refuses to test
inmates for COVID-19 and therefore, infected inmates "mix with the
prison population and infect others."  (Id. ¶ 95.)  Plaintiff also
complains that "officers refus[e] to wear protective gear."  (Id.)
According to Plaintiff, on October 14 and 15, 2020, he experienced
shortness of breath, a headache, dry cough, and loss of taste and
smell.  (Id. ¶¶ 99.)  After "being seen by medical," Plaintiff was
moved to an "isolation cell."  (Id.)  According to Plaintiff, this
"five day isolation [was] [ . . . ] a punishment for voicing his
concerns and encouraging others to speak up."  (Id.)

The Complaint seeks: (1) "to make this a class action
lawsuit" and the appointment of class counsel; (2) "leave to amend
and complete the complaint once he is provided the needed paper,
[] pens, and whatever other needed legal resources"; (3) an order
directing the Defendants to release all individuals from the BMU
"due to the cruel and unusual living conditions"; (4) a trial; and
(5) an order directing Defendants to test all prisoners and staff
for COVID-19.  (Compl. ¶¶ 120-26.)

DISCUSSION

I. Claims Brought By Padilla, Treasure, Martinez, Cullal, Chacon, and Herndez are Dismissed Without Prejudice for Failure to Prosecute

As a threshold matter, although the caption names twelve individuals as plaintiffs, only LaPierre signed the Complaint and completed an application to proceed in forma pauperis ("IFP") and the required Prisoner Litigation Reform Authorization ("PLRA") form. (See Compl.; IFP Mot., ECF No. 2; PLRA Form, ECF No. 3.) Accordingly, by Notices of Deficiency dated January 28, 2021, the Court notified the remaining eleven Plaintiffs that, for their claims to proceed, they must return a signed copy of the Complaint together with the filing fee or a completed IFP application and PLRA form. (See Notices of Deficiency, ECF Nos. 6-16). To date, the Notices sent to Plaintiffs Padilla and Treasure at their addresses of record have been returned to the Court as undeliverable and marked "Discharged" and "Return to Sender." (See ECF Nos. 17-18.) Moreover, Plaintiffs Martinez, Cullal, Chacon, and Herndez have not filed completed IFP applications, have not paid the filing fee, nor have they otherwise communicated with the Court about this case. Accordingly, claims brought by Plaintiffs Padilla, Treasure, Martinez, Cullal, Chacon, and Herndez are DISMISSED WITHOUT PREJUDICE for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

II.  This Action Will Proceed on an Individual Basis by LaPierre
     and Claims Brought By Scully, Taveras, Trent, Thomas, and
     Witts are Dismissed Without Prejudice and with Leave to Refile

Plaintiffs Jonathan Scully ("Scully"), Ely Thomas
("Thomas"), Shawn Trent ("Trent"), Lenny Taveras ("Taveras"), and
Westley Witts ("Witts") responded to the Court's Notices and filed
IFP applications and PLRA forms.  (See ECF Nos. 19-31.)  Thomas,
Trent, and Witts filed signed affidavits in support of the
Complaint.  (ECF Nos. 21 (Thomas Aff.), 24 (Trent Aff.), and 29
(Witts Aff.).)  However, Federal Rule of Civil Procedure 11
requires that all plaintiffs sign "[e]very pleading, written
motion, and other paper."  FED. R. CIV. P. 11(a).  Other than
LaPierre, none of the named Plaintiffs have filed a signed copy of
the Complaint, even after the Court provided them the opportunity
to do so.  "Plaintiffs are not, and will not be, relieved of this
obligation[.]"  Sitts v. Weaver, No. 20-CV-1474, 2021 WL 51411, at
*3 (N.D.N.Y. Jan. 6, 2021).  On this basis, the claims asserted by
Scully, Thomas, Trent, Taveras, and Witts are DISMISSED WITHOUT
PREJUDICE to refiling separate actions.[3]  Id. ("[A]dherence to
[Rule 11] in a multi-plaintiff action serves to ensure that each
pro se plaintiff is on notice of the facts, issues, and obligations
of the parties that arise throughout the litigation."); Smickle v.

---

[3] To be clear: Plaintiffs Scully, Thomas, Trent, Taveras, and Witts
are not required to file a joint complaint.  Rather, each
individual is free to file their own, stand-alone complaint.

Ponte, No. 16-CV-3333, 2016 WL 11647065, at *1 (S.D.N.Y. May 9, 2016) (dismissing plaintiffs where they did not sign the Complaint).

Even if Plaintiffs Scully, Thomas, Trent, Taveras, and Witts signed the Complaint, the Court would sever the claims because the Complaint overwhelmingly asserts allegations specific to Plaintiff LaPierre, whereas the affidavits filed by Thomas, Trent, and Witts describe events that do not arise out of the same transactions or occurrences or involve common questions of law or fact. See Syville v. New York City of New York, No. 20-CV-0570, 2020 WL 2508788, at *1 (S.D.N.Y. May 15, 2020) (noting that pursuant to Federal Rule of Civil Procedure 21, multiple plaintiffs may join in one action if "(1) they assert any right to relief jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (2) if any question of law or fact in common to all plaintiffs will arise in the action."). Nonetheless, even assuming all Plaintiffs were properly joined, "the practical realities of managing this pro se multi-plaintiff litigation militate against adjudicating the plaintiffs' claims in one action." Id. at *2 (noting that in a multi-plaintiff litigation, each plaintiff would "be required to sign every motion, notice, or other submission to be filed. . . . [and given that all plaintiffs did not reside in the same location,] the plaintiffs would have, at best, only a very limited

opportunity to discuss case strategy, share discovery, or even provide each other with copies of the submissions that they were to file with the Court," which "can result in piecemeal submissions, delays, and missed deadlines."). As such, "allowing this action to proceed with multiple plaintiffs would not be fair to the plaintiffs and would not achieve judicial economy." Id. at *3.

Finally, Plaintiff styles the Complaint as a class action. However, as a pro se litigant, Plaintiff may not represent anyone other than himself. Sitts, 2021 WL 51411, at *3 ("a non-attorney is not permitted to represent anyone other than himself") (citing Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)). Accordingly, this action shall proceed with Plaintiff LaPierre as the sole Plaintiff.

III. The Motion to Certify a Class is Denied Without Prejudice

Given that a pro se plaintiff "is unable to represent others," Plaintiff's motion to certify a class (ECF No. 33) is DENIED WITHOUT PREJUDICE to renewal should an attorney appear on his behalf. Miller v. Zerillo, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (finding that a pro se plaintiff "is unable to represent others," and therefore a "motion to certify a class must be denied" without prejudice and subject "to renewal should an attorney appear on behalf of plaintiff."), report and recommendation adopted, 2008 WL 375498 (E.D.N.Y. Feb. 6, 2008).

IV.   LaPierre's *In Forma Pauperis* Application is Granted

Upon review of Plaintiff's declarations in support of his IFP application, the Court finds that Plaintiff is qualified by his financial status to commence this action without prepayment of the filing fees.   See 28 U.S.C. § 1915(a)(1).   Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED.

V.   The Application for a Preliminary Injunction is Denied

Plaintiff filed an application for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a).   (See Mot., ECF No. 4.)   In the application, Plaintiff seeks an order directing Defendants to: (1) release every person housed for more than fifteen (15) days in the Behavior Modification Unit (BMU) at the Nassau County Correctional Center into the general population; (2) provide "LaPierre with all necessary legal material to complete the attached 1983 civil complaint and legal material necessary to submit his leave application to the Court of Appeals," including "the necessary amount of paper, a BIC pen, and other necessary legal supplies"; and (3) "provide all prisoners" and "all officers at N.C.C.C. a mandatory COVID-19 test." (Id.)   For the reasons that follow, the request is DENIED.

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

favor, and [4] that an injunction is in the public interest."
Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  A
preliminary injunction is "an extraordinary and drastic remedy
which should not be routinely granted."  Jefferson v. Soe, No. 17-
CV-3273, 2017 WL 2881138, at *2 (E.D.N.Y. July 6, 2017) (quoting
Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d
Cir. 1981)).  Where, as here, the moving party seeks a "'mandatory
injunction that alters the status quo by commanding a positive
act,' . . . the burden is even higher."  Id. at *3 (quoting
Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master
Fund, Ltd., 598 F.3d 30, 35 n.4 (2d Cir. 2010)) (further citations
omitted).  A mandatory preliminary injunction

> should issue only upon a clear showing that
> the moving party is entitled to the relief
> requested, or where extreme or very serious
> damage will result from a denial of
> preliminary relief.  In the prison context, a
> request for injunctive relief must always be
> viewed with great caution so as not to immerse
> the federal judiciary in the management of
> state prisons.

Id. (internal quotation marks and citations omitted).

First, as stated, Plaintiff may only bring "claims and
request relief on his own behalf, not on behalf of other inmates."
Gillums v. Semple, No. 18-CV-0947, 2018 WL 3404145, at *3 (D. Conn.
July 12, 2018).  Accordingly, Plaintiff "lacks standing to seek a
preliminary injunction on behalf of other inmates in the [BMU or
the Nassau County Correctional Center] because this is not a class

action." <u>Crichlow v. Fischer</u>, No. 12-CV-7774, 2015 WL 678725, at

*6 (S.D.N.Y. Feb. 17, 2015) (internal quotation marks omitted)

(collecting cases).  Specifically, the Court denies Plaintiff's

requests that the Court direct Defendants to release every person

housed for more than fifteen days in the BMU at the Nassau County

Correctional Center into the general population; and to "provide

all prisoners" and "all officers at N.C.C.C. a mandatory COVID-19

test." (<u>See</u> Mot.)  The Court thus construes Plaintiff's motion as

requesting an injunction only on behalf of himself.

     Second, the Court has considered Plaintiff's claims and

finds he has not established a likelihood of success on the merits.

Here, Plaintiff argues that he is likely to succeed only on his

Eighth Amendment cruel and unusual punishment claim.[4]  (<u>See</u> Pl.

Br., ECF No. 4-2, at 5 (arguing "The BMU solitary confinement unit

. . . must evolve with contemporary standards and decency . . . it

is likely that [the] Court will immediately condemn such conditions

and order the facility to undergo fundamental policy changes.");

<u>id.</u> at 5-6 (arguing prison official's failure to test for COVID-

19 constitutes unlawful discrimination against prisoners).)

     The Eighth Amendment to the U.S. Constitution protects

against the infliction of "cruel and unusual punishments." U.S.

---

[4] Specifically, Plaintiff argues "[n]o court in this Country will
continue to allow a correction facility to house prisoners in
solitary confinement under conditions that amount to cruel and
unusual punishment." (Pl. Br. at 5.)

CONST. amend. VIII.   "The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner." Pagan v. Rodriguez, No. 20-CV-0251, 2020 WL 3975487, at *4 (D. Conn. July 12, 2020) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To "establish an Eighth Amendment claim of deliberate indifference to safety, a prisoner must show that: (1) he was subject to conditions of confinement that posed an objectively serious risk of harm, as distinct from what a reasonable person would understand to be a minor risk of harm; and (2) a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (i.e., reflecting actual awareness of a substantial risk that serious harm to the prisoner would result)." Id. (citations omitted); Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (noting that an Eighth Amendment deliberate indifference claim requires that Plaintiff satisfy two elements: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "mental" element, which requires a showing that the officer(s) acted with at least deliberate indifference to the challenged conditions).

Upon review of Plaintiff's submission, the Court finds that Plaintiff has not shown a likelihood of success in

demonstrating the "objective" prong. Plaintiff has not sufficiently alleged that the challenged conditions are sufficiently serious such that preliminary injunctive relief is warranted. Although "unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment," Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013), Plaintiff complains only that his BMU cell is "dirty" and that he was provided nothing but "two green blankets, a bar of soap and a roll of tissue." (Compl. ¶ 15.) Such allegations do not support a finding that Plaintiff's living conditions rise to the level of cruel and unusual punishment. Indeed, "[p]risoners are entitled to satisfaction of their basic human needs although 'comfort within prisons is not constitutionally required.'" Junior v. Garrett, No. 19-CV-03788, 2020 WL 7042811, at *5 (E.D.N.Y. Dec. 1, 2020) (quoting Randle v. Alexander, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)) ("[T]he Constitution does not mandate comfortable prisons. . . .")))).

Nor do the allegations that the food in the BMU is "always served cold" and "everything is dumped on top of one another" (Compl. ¶ 17) demonstrate a likelihood of success on an Eighth Amendment violation. Indeed, it is well-established that "[t]he provision of cold food, is not, by itself, a violation of the Eighth Amendment as long as it is nutritionally adequate and is prepared and served under conditions which do not present an

immediate danger to the health and well being of the inmates who consume it." Martin v. Oey, No. 16-CV-0717, 2017 WL 6614680, at *6 (N.D.N.Y. Nov. 28, 2017) (quoting Waring v. Meachum, 175 F. Supp. 2d 230, 239 (D. Conn. 2001)) (collecting cases).

Further, to the extent LaPierre alleges that the Kitchen Supervisor is liable because he or she failed respond to the grievances regarding the food served in the BMU, that claim fails. To succeed on a claim under Section 1983, a plaintiff must allege sufficient facts to demonstrate a defendant's personal involvement in any alleged constitutional violation. Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir.2003). Here, LaPierre alleges that he "personally [wrote to John Doe Kitchen Supervisor] several times and not one time has the Kitchen Supervisor writ[ten] back." (Compl. ¶ 71.) "That the [Kitchen Supervisor] ignored the plaintiff's grievances is insufficient to impose Section 1983 liability, however, as personal involvement will be found only 'where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.'" Toliver v. Dep't of Corr., No. 10-CV-6298, 2012 WL 4510635, at *8 (S.D.N.Y. Apr. 10, 2012) (quoting Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)), report and recommendation adopted, 2012 WL 4513435 (S.D.N.Y. Sept. 30, 2012). Indeed, while "courts in this Circuit are divided 'regarding whether a supervisor who reviews and ultimately denies a grievance

can be considered personally involved in the unconstitutional act underlying the grievance,' . . . the law is clear that a supervisor's 'mere receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement[.]'" Id. (first quoting Garcia v. Watts, No. 08-CV-7778, 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009); then quoting Harrison v. Fischer, No. 08-CV-1327, 2010 WL 2653629, at *4 (N.D.N.Y. June 7, 2010)) (collecting cases). Plaintiff makes "no allegation that [the Kitchen Supervisor] responded to his grievances or took any other action in regard to his complaints," and therefore, he does not state a claim against the Kitchen Supervisor under Section 1983. Id. Thus, Plaintiff's claims relating to the living conditions in the BMU have little likelihood of success on the merits.

Similarly, Plaintiff has not demonstrated a clear or substantial likelihood of success on the merits insofar as he argues that a failure to test for COVID-19 constitutes cruel and unusual punishment in violation of the Eighth Amendment. "[T]here is no question that an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." Chunn v. Edge, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020). Indeed,

> Courts have long recognized that conditions
> posing an elevated chance of exposure to an
> infectious disease can pose a substantial risk

of serious harm.  Thus, the Supreme Court has
rejected the proposition that prison officials
may "be deliberately indifferent to the
exposure of inmates to a serious, communicable
disease." Thus, determining whether prison
conditions pose a substantial risk of serious
harm from COVID-19, or any other risk, must be
determined "after accounting for the
protective measures [the prison system] has
taken."

Id. (alteration in original) (first quoting Helling v. McKinney,

509 U.S. 26, 35-36 (1993); then quoting Valentine v. Collier, 956

F.3d 797, 801 (5th Cir. 2020)).

Although it is unclear from the Complaint whether the

facility tested Plaintiff for COVID-19, the Complaint alleges that

as soon as Plaintiff experienced symptoms, including headache,

shortness of breath, cough, and a loss of taste and smell, he was

isolated from others after "being seen by medical." (Compl. ¶ 99,

LaPierre Decl., ECF No.4, at ECF p.7, ¶ 12.)  These allegations

suggest that the Nassau County Correctional Center implemented

safety measures in response to COVID-19.  Accordingly, the

"preliminary injunction record leaves substantial reason to doubt

[that Plaintiff] will ultimately succeed in making" a showing of

a substantial risk of serious harm from COVID-19 at the Nassau

County Correctional Center "in light of countermeasures that the

facility has in place." Chunn, 465 F. Supp. 3d at 201.

Plaintiff also seeks an order requesting that Defendants

provide him "with all necessary legal material to complete the

attached 1983 civil complaint and legal material necessary to submit his leave application to the Court of Appeals." (See, e.g., Mot.)  To the extent that Plaintiff alleges that he is being denied access to the courts, "the mere limitation of access to legal materials, without more, does not rise to the level of a constitutional violation." Crichlow v. Fischer, No. 12-CV-7774, 2015 WL 678725, at *7 (S.D.N.Y. Feb. 17, 2015).  "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." Id. (emphasis in original) (quoting Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)) (further citation omitted).  "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." Collins, 581 F. Supp. 2d at 573 (citing Lewis v. Casey, 518 U.S. 343, 353 (1996)).  "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." Crichlow, 2015 WL 678725, at *7 (quoting Smith v. O'Connor, 901 F. Supp. 644, 649 (S.D.N.Y. 1995)) (further citations omitted).  Plaintiff does not address this claim in his moving

papers and "there are, at most, only conclusory suggestions that the denial was malicious or deliberate." Id. Further, the Court takes notice that Plaintiff's filings total at least 274 pages and thus, can reasonably infer that he has a pen and sufficient paper to pursue his claims. In any event, "Plaintiff's failure to allege a key element of a denial of access claim means that he cannot establish a clear or substantial likelihood of success on the merits." Id.

Finally, although Plaintiff complains that he does not have access to a copy machine, he alleges that he was able to send "this action home to my family and have them make copies and forward this action to the Court." (LaPierre Decl. ¶ 20.) Nonetheless, this claim "cannot support a preliminary injunction" because "[a]n inmate does not have a constitutional right to free copies." Crichlow, 2015 WL 678725, at *7 (stating that "Plaintiff cannot, as a matter of law, prevail on a claim that the defendants are unlawfully withholding documents because he cannot afford to make copies.") (citing Collins v. Goord, 438 F. Supp. 2d 399, 416 (S.D.N.Y. 2006) ("[A]n inmate has no constitutional right to free copies and prison regulations that limit access to such copies are reasonably related to legitimate penological interests."))).

Given that Plaintiff has not demonstrated a clear or substantial likelihood of success on his claims, Plaintiff's application for a preliminary injunction is DENIED. N. Am. Soccer

League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 45 (2d Cir. 2018) (not considering other preliminary injunction factors when movant failed to demonstrate substantial likelihood of success in mandatory injunction case); Fernandez-Rodriguez v. Licon-Vitale, 470 F. Supp. 3d 323, 355 (S.D.N.Y. 2020). Plaintiff remains free to develop the record further and to renew his requests for injunctive relief if warranted based on additional facts.

VI. The Request for the Appointment of Counsel is Denied Without Prejudice

Plaintiff's request that the Court appoint pro bono counsel to represent the class because this "class action suit is too complex for plaintiff Mr. LaPierre to handle" (see Class Cert. Mot., ECF No. 33, ¶ 5), is DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW at a later stage in the proceedings. Unlike criminal defendants, civil litigants do not have a constitutional right to counsel. See Hickman v. City of New York, No. 20-CV-4603, 2020 WL 6565079, at *2 (S.D.N.Y. Nov. 9, 2020) (citing United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981)). However, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). When deciding whether to appoint counsel, "the district judge should first determine whether the indigent's position seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). "This means that it appears to the court 'from the face of the

pleading,'" <u>Hickman</u>, 2020 WL 6565079, at *2 (citation omitted),
that the plaintiff "appears to have some chance of success . . . ."
<u>Hodge</u>, 802 F.2d at 60-61.  Where a plaintiff satisfies this
threshold, the Court considers:

> the indigent's ability to investigate the
> crucial facts, whether conflicting evidence
> implicating the need for cross-examination
> will be the major proof presented to the fact
> finder, the indigent's ability to present the
> case, the complexity of the legal issues and
> any special reason in that case why
> appointment of counsel would be more likely to
> lead to a just determination.

<u>Hodge</u>, 802 F.2d at 61-62.  These factors are not restrictive and
"[e]ach case must be decided on its own facts."  <u>Id.</u> at 61.

Upon due consideration of the facts herein, and
construing the pleadings liberally and interpreting them to raise
the strongest arguments they suggest, <u>see</u> <u>Burgos v. Hopkins</u>, 14
F.3d 787, 790 (2d Cir. 1994), the appointment of counsel is not
warranted at this time.  Even assuming Plaintiff meets the
threshold requirements under <u>Hodge</u>, the record reflects that the
legal issues presented by the Complaint are not unduly complex
and, at this juncture, Plaintiff can adequately prosecute his
claims <u>pro se</u>.  Indeed, Plaintiff has demonstrated this ability by
filing a Complaint, an Order to Show Cause for a Preliminary
Injunction, a Motion for Class Certification, and a Motion for
Leave to Amend the Complaint.  Therefore, Plaintiff's motion for
appointment of <u>pro bono</u> counsel is DENIED WITHOUT PREJUDICE AND

WITH LEAVE TO RENEW at a later stage in the proceedings, if warranted at that time.  It is Plaintiff's responsibility to retain an attorney or continue to pursue this individual action pro se. See 28 U.S.C. § 1654.

VII. Review of the Complaint under of 28 U.S.C. § 1915(e)(2)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an in forma pauperis action if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  Further, while 28 U.S.C. § 1915(e)(2)(B) mandates dismissal on any of the aforementioned grounds, the Court must construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  While "'detailed factual

allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   Id. (quoting Twombly, 550 U.S. at 555).

Upon review of the Complaint, the Court finds that Plaintiff's claims may proceed with the exception that, for the reasons stated above, Plaintiff's Eighth Amendment cruel and unusual punishment claim, denial of access to the Courts claim, and claims against the John Doe Kitchen Supervisor are DISMISSED WITHOUT PREJUDICE.

VIII.    Leave to Amend is Granted

On or around February 22, 2021, Plaintiff filed a Motion for Leave to File an Amended Complaint.   (Mot. to Amend, ECF No. 32.)   While leave to amend is not required at this early stage of the proceedings, see FED. R. CIV. P. 15(a)(1),[5] **Plaintiff is GRANTED leave to file an amended complaint that corrects the deficiencies noted above within 45 days of the date of this Order.   Should Plaintiff elect to file an Amended Complaint, it shall be clearly labeled "Amended Complaint" and shall bear the same case number as identified in this Order, i.e., No. 21-CV-0464(JS)(ARL).   The Court**

_____

[5] Federal Rule of Civil Procedure 15 provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

takes notice that Plaintiff did not file a proposed Amended Complaint but submitted a document seeking to add additional parties to the Complaint.  As stated above, Plaintiff may not assert claims on behalf of anyone other than himself.  Further, because the Amended Complaint will completely replace the original Complaint, it must include all factual allegations and claims that Plaintiff seeks to pursue in this case.

**PLAINTIFF IS WARNED** that if he does not file an Amended Complaint within 45 days of the date of this Order, the Clerk of Court shall cause the United States Marshals Service to serve copies of the Summons, Plaintiff's original Complaint (ECF No. 1), and this Order upon Defendants.[6]

<u>CONCLUSION</u>

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff LaPierre's application proceed <u>in forma pauperis</u> (ECF No. 2) is GRANTED; and

**IT IS FURTHER ORDERED** that Plaintiff's application pursuant to Federal Rule of Civil Procedure 65 for preliminary injunctive relief (ECF No. 4) is DENIED; and

---

[6] Plaintiff names two John Does, the "Grievance Supervisor" and the "Kitchen Supervisor"; however, in the absence of any further identifying information, summonses will not be issued for these Defendants.  If their identities can be readily obtained during the course of discovery, then leave to amend the Complaint to include such individuals may be sought.

**IT IS FURTHER ORDERED** that

(a)   this action shall proceed with Plaintiff LaPierre as the sole Plaintiff;

(b)   claims brought by Plaintiffs Padilla, Treasure, Martinez, Cullal, Chacon, and Herndez are DISMISSED WITHOUT PREJUDICE for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b); and

(c)   claims asserted by Scully, Thomas, Trent, Taveras, and Witts are DISMISSED WITHOUT PREJUDICE to each individual refiling separate actions.  If either Scully, Thomas, Trent, Taveras, and/or Witts wish to pursue their claims, they must each commence a new action by filing a separate, signed complaint; and

**IT IS FURTHER ORDERED** that the motion for class certification (ECF No. 33) is DENIED and the request for the appointment of pro bono counsel is DENIED without prejudice and with leave to renew at a later stage in these proceedings, if warranted; and

**IT IS FURTHER ORDERED** that Plaintiff's claims may proceed except that Plaintiff's Eighth Amendment cruel and unusual punishment claim, denial of access to the Courts claim, and claims against the John Doe Kitchen Supervisor are DISMISSED WITHOUT PREJUDICE; and

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file an Amended Complaint (ECF No. 32) is GRANTED and Plaintiff may file an amended complaint within 45 days of the date of this Order that corrects the deficiencies noted above.  Any Amended Complaint shall be clearly labeled "Amended Complaint," shall bear the same case number as identified in this Order, No. 21-CV-0464(JS)(ARL), and must be signed by the Plaintiff; and

**IT IS FURTHER ORDERED** that if Plaintiff does not file an Amended Complaint within 45 days from the date of this Order, the Clerk of Court shall cause the United States Marshals Service to serve copies of the Summonses, Plaintiff's original Complaint (ECF No. 1), and this Order upon Defendants; and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Order to the pro se Plaintiffs at their last known address, with the notation "Legal Mail" on the mailing envelope;[7] and

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[7] It is likely that mail sent Padilla and Treasure will be returned to the Court.  However, this Order is posted to the Court's Electronic Case Filing system and may be viewed there.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March 17 , 2021
          Central Islip, New York